**FILED**

MAY - 7 2001

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
  DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----ooOoo----

LEGAL AND SAFETY EMPLOYER RESEARCH, INC.,

    Plaintiff,

v.

UNITED STATES DEPARTMENT OF THE ARMY,

    Defendant.

NO. CIV. S-00-1748 WBS/JFM

MEMORANDUM AND ORDER

----ooOoo----

    This is an action brought by Legal and Safety Employer Research, Inc. ("LASER") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to enjoin the United States Department of the Army ("Army") from withholding construction performance evaluations prepared pursuant to 48 C.F.R. § 36.201. The matter is before the court on cross motions for summary judgment pursuant to Federal Rule of Civil Procedure 56.

I. <u>Regulatory Framework</u>

  A. <u>The evaluations</u>

    Construction performance evaluations must be prepared at the completion of every government construction project that

1

exceeds certain monetary limits. See 48 C.F.R. § 36.201. The evaluations must be prepared within sixty days of substantial completion of each project. See Engineering Regulation ("E.R.") 415-1-17(4)(b). The evaluations contain ratings that reflect the contractor's performance in terms of cost, schedule, quality, and compliance with regulatory standards.[1] (See Ex. B, Attached to Compl.). There is also a space on each form for the evaluator to provide written comments regarding the particular project.[2] Id.

The evaluating official is usually the "resident engineer" with personal knowledge of the contractor's performance on the project. See E.R. 415-1-17(5)(c)(1); see also 48 C.F.R. § 36.201(a)(2). The evaluating official is expected to be frank and candid in his evaluation of the contractor's performance. (See Decl. of Durham-Aguilera ¶ 5). The completed evaluation is then reviewed for accuracy by an individual, who also has personal knowledge of the contractor's performance, and is at a supervisory level above that of the evaluating official. See E.R. 415-1-17(c)(1); see also 48 C.F.R. § 36.201.

If the evaluating official concludes that a contractor's overall performance was unsatisfactory, the contractor must be notified in writing that a report of unsatisfactory performance is being prepared. See E.R. 415-1-17(c)(2). The contractor must then be given an opportunity to submit written comments, which must be addressed and included in

---

[1] The evaluator chooses from the following ratings: not applicable, outstanding, above average, satisfactory, marginal, or unsatisfactory. (See Ex. B, Attached to Compl.).

[2] The reports are prepared using DD Form 2626. (See Ex. B, Attached to Compl.); see also 48 C.F.R. § 236.201.

the final report. Id.

All performance evaluations, including any amendments to unsatisfactory reports, are filed in a central database system known as the Construction Contractor Appraisal Support System ("CCASS"), where the information is stored for six years. See E.R. 415-1-17(c)(2); see also 48 C.F.R. § 236.201. The information in CCASS may then be used to assist the government in making the decision to award a future contract. Id.; see 48 C.F.R. § 42.15.

    B.  Process for awarding government contracts

The Competition in Contracting Act ("CICA") requires the Army, like other executive agencies, to use one of two procurement methods to select the contract awarded when procuring goods and services. See 10 U.S.C. §§ 2304, et seq.; see also 41 U.S.C. §§ 253, et seq. Those methods are: (1) "competitive negotiation;" and (2) "sealed bidding." Regardless of the procurement method used, the Army is required to consider a contractor's past performance in making an award determination. See 48 C.F.R. § 42.1501; see also 41 U.S.C. § 403(7)(c).

Pursuant to the Federal Acquisition Streamlining Act ("FASA"), an offeror's[3] past performance must be considered when awarding a contract under the "competitive negotiation" method of procurement. See Pub. L. No. 103-355, 108 Stat. 3272; see also 48 C.F.R. § 42.1501 (defining past performance information as relevant information for future source selection purposes). The

---

[3] Under government contract law, prospective contractors on sealed bidding procurements are referred to as "bidders," while prospective contractors on competitively negotiated procurements are referred to as "offerors."

Office of Federal Procurement Policy ("OFPP") is required to issue guidance to the relevant executive agencies on how to consider past performance in making their award determinations. See Pub. L. No. 103-355 § 1091(b), 108 Stat. 3243, 3272; see also 41 U.S.C. § 405(j).

The guidance issued by OFPP is codified in Title 48 of the Code of Federal Regulations, known as the Federal Acquisition Regulations ("FAR"). F.A.R. sections 15.304 and 15.305 make past performance information a factor that must be considered in evaluation of competitive negotiation procurements. See 48 C.F.R. §§ 15.304, 15.305. The Army may use the data stored in CCASS to evaluate the past performance of an offeror during a competitive negotiation. See 48 C.F.R. § 236.201(c).

When utilizing the "sealed bidding" method of procurement, the government will award a contract to the lowest bid of all "responsible bidders." In order to be found "responsible," a bidder must have a satisfactory record of past performance. See 41 U.S.C. § 403(7)(c); see also 48 C.F.R. § 9.104-1(c). If there is a serious deficiency in a bidder's performance rating, he or she is presumed to be "non-responsible" and thus, ineligible to receive a contract award. See 48 C.F.R. § 9.104-3(b). The information regarding past performance in CCASS is used to determine "responsibility." See E.R. 41-1-17(4)(d).

II. Factual and Procedural Background

LASER has requested construction performance evaluations of Nordic Industries, Inc. that were made at the completion of several levee repair projects in California in late

1997 and early 1998 ("Nordic Reports"). The Army determined that the rating information contained within the evaluations is not releasable.

The Chief of the Contracting Division for the Corps of Engineers District in Sacramento, Ruth Anne Ijames, determined that disclosure of all performance evaluations would "jeopardize the integrity and successful completion of agency procurements to which the evaluations relate." (See Decl. of Ijames ¶ 6; see also Def.'s Ex. 3 ¶ 1). In her memorandum dated October 6, 2000, Ijames instructed the Contracting Division that "all such evaluations should be marked 'Source Selection Information - Do Not Release.'" (Def.'s Ex. 3 ¶ 2).

On August 14, 2000, LASER filed this action pursuant to the FOIA, seeking to enjoin the Army from withholding the Nordic Reports. The Army moves for summary judgment on the grounds that the Nordic Reports are exempt from the FOIA under either Exemption 3 or Exemption 5. LASER cross moves for summary judgment on the grounds that the Nordic Reports are not exempt from disclosure under either Exemption 3 or Exemption 5.

III. Discussion

The FOIA "mandates a policy of broad disclosure of government documents." Church of Scientology v. Department of the Army, 611 F.2d 738, 741 (9th Cir. 1980). "When a request is made, an agency may withhold a document, or portions thereof, only if the material at issue falls within one of the nine statutory exemptions found in § 552(b)." Maricopa Audubon Society v. United States Forest Service, 108 F.3d 1082, 1085 (9th Cir. 1997); see Church of Scientology, 611 F.2d at 742. These

1  exemptions are "explicitly exclusive." <u>Department of Justice v.</u>
2  <u>Tax Analysts</u>, 492 U.S. 136, 151 (1989)(quoting <u>FAA Administrator</u>
3  <u>v. Robertson</u>, 422 U.S. 255, 262 (1975)).  Furthermore, "these
4  exemptions 'must be narrowly construed' in light of FOIA's
5  'dominant objective' of 'disclosure, not secrecy.'"  <u>Maricopa</u>
6  <u>Audubon</u>, 108 F.3d at 1085 (quoting <u>Department of the Air Force v.</u>
7  <u>Rose</u>, 425 U.S. 352, 361 (1976)).

8      "Summary judgment is a proper means of resolving a FOIA
9  claim."  <u>Assembly of the State of California v. United States</u>
10 <u>Department of Commerce</u>, 797 F.Supp. 1554, 1559 (E.D. Cal.
11 1992)(citing <u>National Wildlife Federation v. United States Forest</u>
12 <u>Service</u>, 861 F.2d 114 (9th Cir. 1988)).  The government agency
13 bears the burden of proving that a particular document falls
14 within one of the nine exemptions.  See <u>Kamman v. United States</u>
15 <u>Internal Revenue Service</u>, 56 F.3d 46, 48 (9th Cir. 1995).  The
16 government may submit affidavits to satisfy their burden, but the
17 government "'may not rely upon conclusory and generalized
18 allegations of exemptions.'"  <u>Id.</u> (quoting <u>Church of Scientology</u>,
19 611 F.2d at 742).  Affidavits submitted by the government must
20 contain "'reasonably detailed descriptions of the documents and
21 allege facts sufficient to establish an exemption.'"  <u>Kamman</u>, 56
22 F.3d at 48 (quoting <u>Lewis v. IRS</u>, 823 F.2d 375, 378 (9th Cir.
23 1987)).

24     A.  <u>Exemption 3</u>

25         Pursuant to 5 U.S.C. § 552(b)(3) ("Exemption 3"), the
26 government may not disclose records that are:
27     specifically exempted from disclosure by statute (other
        than section 552b of this title) provided that such
28      statute (A) requires that the matters be withheld from

6

```
    the public in such a manner as to leave no discretion
    on the issue, or (B) establishes particular criteria
    for withholding or refers to particular types of
    matters to be withheld.
```

5 U.S.C. § 552(b)(3).

"The aim of exemption 3 is to incorporate only those statutes where it is clear that the basic policy decision in favor of nondisclosure has been made by the Legislative rather than by the Executive Branch." Long v. IRS, 742 F.2d 1173, 1179 n.14 (9th Cir. 1984)(citing American Jewish Congress v. Kreps, 574 F.2d 624, 628 (D.C. Cir. 1978)). Exemption 3 is written in the disjunctive, thus, a statute is a nondisclosure statute if it satisfies either subsection A or subsection B. See Lessner v. U.S. Dept. of Commerce, 827 F.2d 1333 (9th Cir. 1987).

The statute upon which defendant relies in its assertion of Exemption 3 is 41 U.S.C. § 423(a)(1), also known as the Procurement Integrity Act, which provides that:

```
    A person described in paragraph (2) shall not, other
    than as provided by law, knowingly disclose contractor
    bid or proposal information or source selection
    information before the award of a Federal agency
    procurement contract to which the information relates.
```

41 U.S.C. § 423(a)(1).

At oral argument, defendant conceded that 41 U.S.C. § 423 does not qualify as a nondisclosure statute under subsection A because the Army is given discretion to determine what materials constitute "source selection information." American Jewish Congress, 574 F.2d at 628 (Subsection A "embraces only those statutes incorporating a congressional mandate of confidentiality that, however general, is absolute and without exception.")

7

The court therefore looks to subsection B to determine whether exemption 3 applies. A statute is a nondisclosure statute under subsection B if it: (1) establishes particular criteria for the withholding of records; or (2) refers to the particular types of material to be withheld. See 5 U.S.C. § 552(b)(3)(B). To satisfy subsection B, a statute must limit agency discretion to a particular item or class of items, or it must limit agency discretion by prescribing guidelines for the exercise of that discretion. See Long, 742 F.2d at 1178.

In 41 U.S.C. § 423, Congress limited agency discretion to withhold information to, "source selection information," then carefully identified documents that make up source selection information. See 41 U.S.C. § 423(a)(1); see also 41 U.S.C. § 423(f)(2)(A)-(J).[4] Accordingly, the court is satisfied that

---

[4] The term "source selection information" means any of the following information prepared for use by a Federal agency for the purpose of evaluating a bid or proposal to enter into a Federal agency procurement contract, if that information has not been previously made available to the public or disclosed publicly:
    (A) Bid prices submitted in response to a Federal agency solicitation for sealed bids, or lists of those bid prices before public bid opening.
    (B) Proposed costs or prices submitted in response to a Federal agency solicitation, or lists of those proposed costs or prices.
    (C) Source selection plans.
    (D) Technical evaluation plans.
    (E) Technical evaluations of proposals.
    (F) Cost or price of evaluations of proposals.
    (G) Competitive range determinations that identify proposals that have a reasonable chance of being selected for award of a contract.
    (H) Rankings of bids, proposals, or competitors.
    (I) The reports and evaluations of source selection panels, boards, or advisory councils.
    (J) Other information marked as "source selection information" based on a case-by-case determination by the head of the agency, his designee, or the contracting officer that its

8

section 423 is a nondisclosure statute under Exemption 3, subsection B.

However, the court cannot find that the Nordic Reports fall within any of the categories of information defined in section 423. Defendant relies upon the "case-by-case" determination under 41 U.S.C. § 423(f)(2)(J) to support its contention that the reports were properly withheld. In order to be withheld under subsection J, information must first be determined useful on a case-by-case basis, and then the document must be marked accordingly. That is not what occurred here.

In this matter, Ijames issued a memorandum in October, 2000, after the FOIA request was made, declaring all contract evaluations to be source selection information and instructing that they be marked as such. (See Decl. of Ijames ¶ 6; see also Def.'s Ex. 3 ¶ 2). This is a sweeping, categorical determination, not the "case-by-case" determination required by the statute. Ijames did not consider whether the Nordic Reports were going to be used as source selection information during a procurement. In fact, at the time of the FOIA request, the Nordic Reports were not even marked as "source selection information." Accordingly, the Nordic Reports are not exempt from the FOIA under Exemption 3.

B. <u>Exemption 5</u>

Alternatively, defendant relies upon 5 U.S.C. § 552(b)(5) ("Exemption 5") to support its contention that the

---

disclosure would jeopardize the integrity or successful completion of the Federal agency procurement to which the information relates. 41 U.S.C. § 423(f)(1)(A)-(J).

9

Nordic Reports are exempt from disclosure. Under Exemption 5, the reports are exempt from disclosure if they are: (1) inter- or intra-office memoranda; and (2) consist of material that would not be available by law to a party in litigation with the agency. See 5 U.S.C. § 552(b)(5); see also Assembly of the State of California, 797 F.Supp. at 1559.

The parties do not contest that the Nordic Reports satisfy the first prong. Thus, the only issue for the court to decide is whether the evaluations satisfy the second prong. "The second prong of the analysis of Exemption 5 has been interpreted to incorporate several discovery privileges enjoyed by government in litigation with private parties." Id. at 1561 (citing United States Dept. of Justice v. Julian, 486 U.S. 1, 11-12 (1988)). Here, defendant asserts the "deliberative process" privilege.

To qualify for exemption under the deliberative process privilege, a document must be both "antecedent to the adoption of agency policy" and "deliberative," meaning "it must actually be related to the *process* by which policies are formulated." National Wildlife Federation v. United States Forest Service, 861 F.2d 1114, 1117 (9th Cir. 1988)(emphasis in original); see Judicial Watch, Inc. v. Clinton, 880 F.Supp. 1 (D.D.C. 1995) (citing Jordan v. United States Department of Justice, 591 F.2d 753, 774 (D.C. Cir. 1978)). "These twin requirements recognize that the underlying purpose of this privilege is to "'protect[] the consultative recommendations, and deliberations, comprising part of a process by which governmental decisions and policies are formulated.'" Id. (quoting Jordan, 591 F.2d at 774).
///

However, a document need not contain actual recommendations on law or policy to qualify for Exemption 5. National Wildlife Federation, 861 F.2d at 1118 (citing Vaughn v. Rosen, 523 F.2d 1136, 1144 (D.C. CIR. 1975)). "Where either the disclosure of the manner of selecting or presenting facts would expose the deliberative process, or where facts are 'inextricably intertwined' with 'policy-making processes,' the material is exempt." National Wildlife Federation, 861 F.2d at 1119 (citing Ryan v. Department of Justice, 617 F.2d 781, 790 (D.C. CIR. 1980)).

The aim of Exemption 5 is "to prevent the disruption of a free flow of ideas, opinions, advice and frank discussions within agencies concerning their policies and programs." National Wildlife Federation, 861 F.2d at 1117 (quoting Julian, 806 F.2d at 1419). For example, in Judicial Watch, the court found that a proposed memorandum setting forth "a detailed policy evaluation which the agency ultimately elected not to issue," was antecedent to the adoption of agency policy even though the agency chose not to adopt the proposed policy, and thus the memorandum was exempt from disclosure pursuant to Exemption 5. See Judicial Watch, 880 F.Supp. at 13. The court also found that a proposed response to a congressional inquiry was antecedent to the adoption of agency policy, because it was not the final, published position of the agency. See id.

Other examples of the type of policy decisions contemplated by Exemption 5 include the draft Environmental Impact Statements and draft Forest Plans, prepared by the Land Management Planning Office of the Forest Service in National

11

Wildlife Federation, 861 F.2d at 1123. In National Wildlife Federation, the Ninth Circuit found that these "Washington Office previews [did] not constitute statements of final, binding agency policy" and thus were exempt from disclosure pursuant to Exemption 5. Id.

The type of evaluations at issue in this matter are quite different. These evaluations are created at the completion of every government construction project that exceeds certain monetary limits. See 48 C.F.R. § 36.201. They contain ratings that reflect the contractor's performance in terms of cost, schedule, quality, and compliance with regulatory standards. (See Ex. B, Attached to Compl.). There is also a space on each form for the evaluator to provide written comments regarding the particular project.[5] Id. The evaluations are then stored in CCASS and may be used in the future for determining whether to award government procurement contract. As a result, the nature of the evaluations can be characterized as both predecisional and postdecisional.

However, even if these evaluations are characterized as predecisional, the decision they would precede is not a "policy decision," as required by Exemption 5. Defendant does not cite, and the court cannot find any authority to support a finding that the decision to award a government procurement contract is the type of policy decision contemplated by Exemption

---

[5] No written comments were made on the Nordic Reports. (See Ex. B, Attached to Compl.).

5.[6]  Accordingly, the evaluations are not exempt under Exemption 5.

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment be, and the same hereby is, GRANTED; and that defendant's motion for summary judgment be, and the same hereby is, DENIED.  Defendant is ordered to disclose the requested evaluations to plaintiff, without redaction.

DATED: May 4, 2001

*[signature]*
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[6]  Because the court finds they do not relate to a policy decision, the court need not determine whether the Nordic Reports are deliberative.

13

United States District Court
for the
Eastern District of California
May 7, 2001

* * CERTIFICATE OF SERVICE * *

2:00-cv-01748

Legal and Safety

   v.

United States Army

---

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on May 7, 2001, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office, or, pursuant to prior authorization by counsel, via facsimile.

   David A Rosenfeld                              SH/WBS
   Van Bourg Weinberg Roger and Rosenfeld
   180 Grand Avenue
   Suite 1400
   Oakland, CA  94612

   Yoshinori H T Himel
   United States Attorney
   501 I Street
   Suite 10-100
   Sacramento, CA  95814

   Lori Ann Lange
   PRO HAC VICE
   Bastianelli Brown and Kelley
   1133 21st Street, NW
   Suite 500
   Washington, DC  20036

   Adrian L Bastianelli III
   PRO HAC VICE
   Bastianelli Brown and Kelley
   1133 21st Street, NW
   Suite 500
   Washington, DC  20036

Jack L. Wagner, Clerk

by: Deputy Clerk